UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| STEVE GAY, | : | Case No. 1:07-cv-859 |
|---|---|---|
| Plaintiff, | : | Judge S. Arthur Spiegel |
|  | : | Magistrate Judge Timothy S. Black |
| vs. | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : |  |
| Defendant. | : |  |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 22) (ALJ's decision)).

**I.**

On September 10, 2003, Plaintiff filed an application for DIB and SSI, alleging a disability onset date of December 13, 2002, due to severe and uncontrolled diabetes mellitus, fatigue, and severe leg pain. (Tr. 51-53, 81). In a Reconsideration Disability Report, Plaintiff was described as "having no energy at all" and "being so tired that he

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

sleeps most of the day." (Tr. 84). In that same document, Plaintiff openly questioned if life was worth the pain. (*Id*.)

Plaintiff's claims were denied initially and on reconsideration. (Tr. 15). On July 16, 2004, Plaintiff requested a hearing *de novo* before an ALJ. (*Id*.) A hearing was held on October 24, 2005 at which Plaintiff appeared with counsel and testified. (Tr. 15-22). A vocational expert, Tracy Young, was also present and testified. (Tr. 15). The ALJ concluded that despite Plaintiff's medical problems, Plaintiff was capable of sedentary work and was therefore not disabled. (Tr. 16).

Plaintiff was 35 years old at the time of the ALJ's decision. (Tr. 63). Plaintiff completed the eleventh grade and has past work experience as an asphalt truck driver, a fertilizer truck driver, a mechanic, and a pharmaceutical delivery driver. (Tr. 73-79, 258, 260-63). Plaintiff is a single parent and lives in an apartment with his three children, ages 15, 12, and 7. (Tr. 269). Plaintiff's parents help to support him and his children, and his mother prepares all of their meals. (Tr. 270-72, 279).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in section 216(i) of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since December 13, 2002 (20 CFR §§ 404.1520(b) and 416.920(b)).

3. The claimant has the following severe impairment: insulin dependent diabetes mellitus (20 CFR §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR §§ 404.1520(d) and 416.920(d)).

5. After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has a residual functional capacity for sedentary work as defined by 20 CFR §§ 404.1567 and 516.97 in that he can lift and carry ten pounds occasionally, but he is unable to work around unprotected heights or hazards.

6. The claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).

7. The claimant was born on July 16, 1970, and was 32 years old on the alleged disability onset date. He is 35 years old at present and is a younger individual age 18-44 (20 CFR §§ 404.1563 and 416.963).

8. The claimant has a "limited education" and is able to communicate in English (20 CFR §§ 404.1564 and 416.964).

9. The claimant obtained no skills from past relevant skilled and semi-skilled work transferable to other jobs (20 CFR §§ 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 17-21).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI or DIB. (Tr. 22).

On appeal, Plaintiff argues that: (1) the ALJ erred when she failed to give proper deference or weight to the opinions of Plaintiff's attending physicians; (2) the ALJ erred when she disregarded or ignored the provisions of Social Security Ruling 02-01p; and (3) the ALJ erred when she substituted her opinion for the Plaintiff's treating physicians. Upon careful review, the undersigned finds Plaintiff's assignments of error to be well-taken and dispositive, and, accordingly, hereby recommends that judgment be entered in favor of Plaintiff awarding benefits.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For his first assignment of error, Plaintiff maintains that the ALJ erred when she failed to give proper deference or weight to Plaintiff's treating physicians. The undersigned agrees.

Plaintiff has three treating physicians, Drs. Terren Koles, Allen Cline, and Thomas Koroscil. Dr. Koles was Plaintiff's primary care physician, and Drs. Cline and Koroscil were Plaintiff's endocrinologists.

Dr. Koles began treating Plaintiff on June 13, 2002. (Tr. 98). Treatment notes indicate that Plaintiff was diagnosed with diabetes mellitus, hypertension, leg and back myalgia, bilateral carpal tunnel syndrome ("CTS"), and gastroesophageal reflux disease ("GERD"). (Tr. 98). Dr. Koles also treated Plaintiff for other conditions including myalgia (muscle pain), abdominal pain, neck pain, and headaches. (Tr. 170, 183, 185). Plaintiff's blood sugar levels ranged between 200 and 300,[2] and his weight fluctuated between 299 and 313 pounds. (Tr. 101-06). Defendant focuses on a treatment note dated

---

[2] Despite variable intervals between meals, human blood glucose levels normally remain between 80-110.

September 4, 2003, which indicates that Plaintiff had not checked his blood sugar level for a week. (Tr. 106). Specifically, Dr. Koles stated that Plaintiff had "[p]oor compliance re[garding] meals, exercise, [and] remembering to take [medications]." (Tr. 99). However, a close review of the record indicates that Plaintiff actually ran out of insulin. (*Id.*)

On October 5, 2004, Dr. Koles responded to interrogatories indicating that Plaintiff's diabetes was under poor control. (Tr. 157). He stated that "in recent months [Plaintiff] had been compliant with his insulin usage whereas in 2002 [*i.e.*, prior to his claimed period of disability] that had not necessarily been the case" and that diet and exercise remained a problem. (*Id.*) He noted that Plaintiff's dosages of insulin had been increased, and it appeared that Plaintiff was insulin resistant or intolerant. (*Id.*) He stated that Plaintiff's fatigue was consistent with the severity of his diabetes, in addition to his hypertension and obesity. (Tr. 158). It was also reasonable to believe that Plaintiff had neuropathy[3] from his diabetes. (*Id.*) Dr. Koles indicated that Plaintiff's obesity played a role in his low back, leg, and feet pain, numbness, and weakness. (*Id.*) Dr. Koles opined that, during the time Plaintiff had been under his care, Plaintiff's diabetes and associated symptoms and related medical problems were of such severity that Plaintiff was prevented from maintaining or sustaining any level of competitive work activity, even work activity of a sedentary nature. (Tr. 159). Specifically, Dr. Koles stated that: "Due

---

[3] Neuropathy is a medical term describing disorders of the nerves of the peripheral nervous system. Common qualities of neuropathic pain includes burning or coldness, "pins and needles" sensations, numbness, and itching.

to [Plaintiff's] continued poor control of his [diabetes] inspite [sic] of treatment by an endocrinologist, it is possible that [Plaintiff] may not be able to work." (*Id.*)

Between April 2004 and July 2005, Dr. Koles continued to see Plaintiff, continued to try to manage Plaintiff's diabetic medication, and then referred him to an endocrinologist in May 2004. (Tr. 182-96).

On May 16, 2004, Dr. Craig Thompson, a state agency physician specializing in *pediatrics*, reviewed the evidence and opined that Plaintiff could perform medium exertion work, but due to carpal tunnel syndrome ("CTS"), was limited to only frequent pushing and pulling with his upper extremities. (Tr. 150-53). Dr. Thompson considered Plaintiff's poorly controlled diabetes, CTS, obesity, complaints of fatigue, and "fairly normal examination findings." (Tr. 150).

On May 25, 2004, Plaintiff saw Dr. Allen Cline, an endocrinologist. (Tr. 198). Dr. Cline diagnosed Plaintiff with diabetes mellitus in poor control, hypertension, GERD, and exogenous obesity. (Tr. 200). He adjusted Plaintiff's medications and ordered additional testing. (Tr. 200). Dr. Cline noted that, in the absence of correctable causes for insulin resistance, a treatment regimen would attempt to overcome Plaintiff's insulin resistance with higher doses of insulin. (Tr. 200). Dr. Cline altered Plaintiff's medication and insulin levels after each office visit but could not find appropriate levels in order to regulate Plaintiff's blood sugar. (Tr. 206, 223, 228).

On March 7, 2005, Dr. Thomas Koroscil, an endocrinologist, began treating Plaintiff. (Tr. 160). On March 8, 2005, Dr. Koroscil wrote a letter to Dr. Koles stating that Plaintiff's diabetes was "uncontrolled" and that Plaintiff was "insulin resistant." (Tr. 162). He also stated that he believed Plaintiff was "compliant with his medications." (*Id.*) Dr. Koroscil indicated that Plaintiff had been placed on maximum levels of Actos, Glucophage, Glucotrol, and high doses of insulin. (Tr. 162). Dr. Koroscil noted that he had stopped Plaintiff's oral medications because they were expensive and not contributing to the control of his sugar levels and he increased Plaintiff's dosage of insulin. (Tr. 162).

On August 31, 2005, Dr. Koroscil completed interrogatories stating that Plaintiff's diagnosis included type II diabetes, hypertension, hyperlipidemia, and obesity. (Tr. 178). Dr. Koroscil noted that Plaintiff's diabetes was uncontrolled, he was insulin resistant, and no secondary cause had been identified, although obesity contributed to the insulin resistance. (Tr. 178). He noted that Plaintiff's fatigue was likely a consequence of the hyperglycemia secondary to his diabetes. (Tr. 178). Dr. Koroscil stated, "I hope to gain control of his diabetes over the next year, but it will take time. In the meantime, it is clear he cannot work. I would consider him unable to work for a period of 8 months. I would re-evaluate his status at that time." (Tr. 179).

In summary, all three treating physicians found that Plaintiff's condition was poorly controlled or uncontrolled despite treatment. Two of the three physicians, Drs. Koles and Koroscil, expressly opined that Plaintiff was incapable of any level of

sustained competitive work activity due to the problems associated with his diabetes. (Tr. 159, 179). Moreover, there is no contrary medical evidence in the record other than a consultative review by a pediatrician. (Tr. 148-153).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); s*ee also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435 (if not contradicted by substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians:

> "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Furthermore, the ALJ's explanation "must be sufficiently specific to make clear to any subsequent reviews the weight the adjudication gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9. When an ALJ fails to follow these procedural rules, courts will reverse and remand unless the error is harmless. *Wilson*, 378 F.3d at 547.

A consultative physician's assessment does not constitute *substantial evidence* so as to overcome the properly supported opinions of physicians who treated Plaintiff over a period of years. *Lashley*, 709 F.2d at 1054. The instant case is a textbook example of why the opinion of a treating physician is entitled to greater weight than that of a nontreating physician. It bears repeating that

> "these [treating] sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the applicant's] medical impairment(s) and *may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations,* such as

> consultative examinations or brief hospitalizations."

20 C.F.R. § 404.1527(d)(2) (emphasis added).

The one-time consultative examination of Plaintiff conducted by Dr. Thompson, a *pediatrician*, did not and could not provide sufficient details as to Plaintiff's diabetes, as Plaintiff's condition is complex and has been ongoing for many years. Because the ALJ failed to accord any significant weight to the opinion of the treating physicians in this case, her findings, which rely on the RFC of a one-time consultative pediatrician, to the exclusion of the treating endocrinologists, is without substantial support in the record.

**B.**

For his second assignment of error, Plaintiff claims that the ALJ disregarded or ignored the provisions of Social Security Ruling 02-01p, which states:

> "*We consider obesity to be a medically determinable impairment* and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to *consider the effects of obesity* not only under the listings but also *when assessing a claim* at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."

(Emphasis added).

The ALJ's decision does not indicate that Plaintiff's residual functional capacity ("RFC") was assessed in a manner consistent with SSR 02-1p. There is no indication of the individual and/or combined effect of Plaintiff's obesity on his diabetes. The extent of the ALJ's attention to the issue was a statement that "although the claimant is obese, there

is no evidence his obesity alone imposes more than a slight or minimal limitation in his ability to perform basic work-related work activities on a sustained basis." (Tr. at 18). This analysis is insufficient to fulfill the requirements of SSR 02-01p.

Although the ALJ references Plaintiff's obesity in her decision and included his obesity as a "severe" impairment, she did not perform an individualized assessment of the impact of obesity on the Plaintiff's functioning as required by Social Security Ruling (SSR) 02-01p. SSR 02-01p requires that an assessment be made of the effect obesity has on the individual's ability to perform routine movement and necessary activity within the work environment. 2002 SSR LEXIS 1 at *16. *See also Kennedy v. Astrue*, 247 Fed.Appx. 761 (6th Cir. 2007). Merely stating that an obese individual's symptoms would improve if he lost weight does not fulfill the requirements of the ruling.

Furthermore, the ALJ improperly relies on Plaintiff's failure to comply with diet and exercise in determining that Plaintiff's assertion of debility was not fully credible. (Tr. 28). It is improper to use "failure to follow prescribed treatment for obesity to deny benefits." 2002 SSR LEXIS 1 at *25. As the Plaintiff notes in his brief, however, this is not a "compliance case" in which the claimant was found to be disabled but failed to follow prescribed treatment which would restore his ability to work. *See* 20 C.F.R. § 416.930. In fact, Dr. Koroscil expressly states that Plaintiff's limitations were not the result of a failure to follow treatment - and that he was compliant. *See Moore v. Astrue*, No. 07-115-GWU, 2008 U.S. Dist. LEXIS 73180, at *16 (E.D. KY Sept. 23, 2008) (remanding the decision in part because the ALJ's rationale for finding the plaintiff not

disabled related to his failure to follow a diabetic diet, exercise, stop smoking, as well as his initial resistance to taking insulin)

Additionally, this court has held that physicians' recommendations to lose weight do not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake treatment. *Harris v. Heckler*, 756 F.2d 431, 436 n.2 (6th Cir. 1985). It is impermissible to presume that obesity can be remedied. *Id.*; *see also Stone v. Harris*, 657 F.2d 210, 212 (8th Cir. 1981).

Accordingly, the ALJ's failure to properly consider Plaintiff's obesity renders her decision not supported by substantial evidence.

## C.

For his third assignment of error, Plaintiff claims that the ALJ improperly substituted her own opinion for that of Plaintiff's treating physicians. Specifically, Plaintiff claims that the ALJ improperly played the role of medial expert in determining Plaintiff's medical problems. The undersigned agrees.

While it is the ALJ's function to determine a claimant's RFC based on the record, an ALJ cannot substitute her "medical" opinion for that of a treating physician. *See e.g., Hall v. Celebreeze*, 314 F.2d 686, 690 (6th Cir. 1963) ("While the Secretary may have expertise in respect of some matters, we do not believe he supplants the medical expert."); *Clifford v. Apfel*, 227 F.3d 863-870 (7th Cir. 2000) ("an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority

in the record"); *Rohan v. Chater,* 98 F.3d 966, 968 (7th Cir. 1996) ("As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons . . . for the weight we give your treating source's opinion."); *Meece v. Comm'r*, 192 Fed. Appx. 456, 465 (6th Cir. 2006) ("Judges, including administrative law judges of the social security Administration, must be careful not to succumb to the temptation to play doctor.").

There is nothing in the record to support the ALJ's finding that Plaintiff can perform sedentary work.[4] Here, it is evident that the ALJ improperly ignored the treating physician's medical limitations and instead substituted her own less strenuous one. The ALJ may not substitute her own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence. *McCain v. Dir., Office of Workers Comp. Programs,* 58 Fed. App'x 184, 193 (6th Cir. 2003). The ALJ does not cite to any medical opinion contrary to the opinions of the treating physicians.

The ALJ justifies her opinion that Plaintiff's symptoms "are not entirely credible" by alleging that "his level of medical treatment is inconsistent with his allegations (i.e., only conservative treatment), he has never been hospitalized for hypo or hyperglycemia, and he has displayed little, if any, end organ damage." (Tr. 19). The ALJ's decision

---

[4] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a desentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

-14-

directly contradicts the opinions of Plaintiff's treating physicians, Drs. Koles and Koroscil, who reached a disability finding despite the lack of hospitalizations or end organ damage. The ALJ may not selectively consider the evidence in denying benefits. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-241 (6th Cir. 2002).

Accordingly, upon careful review, the undersigned finds that the ALJ's nondisability finding is not supported by substantial medical evidence.

### III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability is overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of Plaintiff's credible assertions of disability, the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Plaintiff's treating physicians, proof of disability is overwhelming.

## IV.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to disability insurance benefits and supplemental security income beginning on December 13, 2002, be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

Date: December 19, 2008             s/Timothy S. Black
                                    Timothy S. Black
                                    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| STEVE GAY, | : | Case No. 1:07-cv-859 |
| | : | |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).